## UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

KENYATTA BROWN
Plaintiff

v.

FERRARA CANDY COMPANY,
Defendant

No. 22 CV 04875

Judge Jeremy C. Daniel

### MEMORANDUM OPINION AND ORDER

Plaintiff Kenyatta Brown, a gay African American man who was formerly employed by Defendant Ferrara Candy Company ("Ferrara"), filed this *pro se* employment discrimination suit alleging hostile work environment, retaliation, and wrongful termination pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*, and violation of the Family and Medical Leave Act of 1993, 29 U.S.C. § 2601 *et seq.* ("FMLA"). Ferrara now moves to dismiss Brown's amended complaint in part. R. 22. For the reasons that follow, we deny the motion with respect to Brown's Title VII hostile work environment claim and grant the motion with respect to Brown's Title VII failure-to-hire claims.

### BACKGROUND

We take the following facts from the amended complaint, exhibits attached thereto, and documents referred to in the amended complaint that are central to Brown's claim. *Brownmark Films, LLC v. Comedy Partners*, 682 F.3d 687, 690 (7th Cir. 2012). Because Brown is proceeding *pro se*, we also consider allegations put forth in response to Ferrara's motion to dismiss, so long as they are consistent with the

facts set forth in the amended complaint. *See, e.g.*, *De Lion v. CRRC Sifang Am., Inc.*, No. 22 CV 00070, 2023 WL 4899814, at *1 n.1 (N.D. Ill. Aug. 1, 2023) (citing *Gutierrez v. Peters*, 111 F.3d 1364, 1367 n.2 (7th Cir. 1997) and *Defender Sec. Co. v. First Mercury Ins. Co.*, 803 F.3d 327, 335 (7th Cir. 2015)); *see also Gordon v. Sheahan*, No. 96 C 1784, 1997 WL 136699, at *1 (N.D. Ill. Mar. 24, 1997) ("[I]n determining whether a *pro se* plaintiff has stated a claim the court is to consider allegations made in all documents filed with the court.") (citation omitted).

Defendant Ferrara is a manufacturer of candy and gummy vitamins based in Bellwood, Illinois. R. 1 ¶ 2. Brown is a gay African American man who was employed by Ferrara from November 2020 until June 8, 2022, as a customer service representative at Ferrara's Bellwood facility. R. 20 ¶¶ 1, 6, 7.[1] Brown was a member of the vitamins, minerals, and supplements, or "VMS," division. *See id.* at 32–24 (Exhibit E). In this position, he was responsible for managing ingredient deliveries and monitoring inventory levels, as well as interfacing with customers.

Brown's issues with Ferrara began in November 2021, when he informed VMS Director Sheryl Kasbaum and Senior Director Don L. Henderson that he was not receiving reimbursement for his cell phone plan. *Id.* ¶ 14. Brown claims that he was forced to use his personal cell phone for work-related tasks without reimbursement,

---

[1] The amended complaint does not specify Brown's sexual orientation. However, Brown's initial *pro se* complaint indicates that he is gay, R. 1 ¶ 1, and Brown's amended complaint indicates that he was discriminated against based on his sexual orientation. *See generally* R. 20. We find that these allegations are sufficient to establish, for the purposes of this motion, that Brown is a gay man. *Cf. Hardy v. Pinkerton Sec. Servs.*, 20 F.3d 469 (5th Cir. 1994) (rejecting argument that plaintiff's failure to specify his own race was fatal to his Title VII discrimination claim because allegations that plaintiff was discriminated against in favor of a white employee implied that plaintiff was not white).

while other non-African American employees were reimbursed. *Id.* ¶¶ 14–15. Brown also complained to Ferrara's HR department and was told that he would have to use his personal cell phone without reimbursement. *Id.* ¶ 15–16.

Following Brown's complaint to HR about cell phone reimbursement, he was asked via email to attend a Zoom meeting with Henderson. *Id.* ¶ 18. Brown alleges that the entire VMS team was copied on Henderson's email, but only he was required to attend. *Id.* When Brown logged into the meeting, Henderson (who is also black) began yelling at Brown and responded to his allegations of discrimination by making unspecified comments about Brown's race, saying "that's y'all problem," and telling him to "act like a man." *Id.* ¶¶ 18–20. After the meeting, Brown voiced concerns to Kasbaum about Henderson's comments and stated that he would like to involve HR due to the "tone, language, and approach of the meeting." *Id.* ¶ 21. Kasbaum told Brown not to involve HR "for something so small." *Id.* Despite Kasbaum's instruction, Brown met with HR to inform them about the incident. *Id.* No one ever followed up with him. *Id.* A few days after Brown's complaint, Kasbaum told Brown that the HR manager had "mentioned the meeting" to her and that she and Henderson were "not happy" with Brown. *Id.*¶ 23.

Things got worse for Brown after that. Brown alleges that Henderson and Kasbaum began to assign him tasks that were outside of his job description. *Id.* ¶¶ 17, 26(a), 26(e). The company also posted a job opening for a "VMS Distribution Analyst"—a position that Brown was interested in applying for—but Henderson and Kasbaum told him not to apply. *Id.* ¶ 26(b). Instead, Brown claims that Ferrara

"preselected" another individual for the position. *Id.* The complaint does not specify this individual's race or sexual orientation. *See id.* Once again, Brown communicated these incidents to HR, but never received any follow up. *Id.* ¶ 26(f).

In March 2022, Ferrara ended Brown's work from home privilege and required him to work from the office part time during the week. R. 20 at 35 (Exhibit F-1). Brown was required to work in the same 8x8 foot workspace as another VMS employee named John Kornfiend. *See id.* ¶¶ 36–37; R. 26 at 4. According to Brown, Kornfiend would "make racial, political, and radical comments" to Brown while he was in the office and would harass him "with a gun and a knife." R. 20 ¶ 37. Kornfiend "openly stated that he disliked gays and blacks and is a conservative man." R. 26 at 4. Brown's EEOC intake notes indicate that Kornfiend would stand next to a "Blue Lives Matter" flag during video calls on work from home days, which Brown believed was an attempt to intimidate him. R. 25 at 43. Brown reported Kornfiend's actions to HR and Ferrara's safety manager and requested that he be transferred to a different workspace. R. 20 ¶¶ 37–38. These requests were denied. *Id.*

Brown alleges that his supervisors allowed Kornfiend to harass him so that he would either quit his job or stop complaining to HR. *Id.* ¶ 64.While the harassment was ongoing, Brown alleges that Ferrara continued to assign him additional tasks outside of his job description. *Id.* ¶ 17. He claims that Henderson and Kausbaum micromanaged him. *Id.* ¶ 34. As a result, Brown's health deteriorated. *Id.* ¶ 42. Brown's EEOC intake notes indicated that he was diagnosed with hyperthyroid. R. 25 at 43. Brown asked for increased work from home privileges but did not receive

them. R. 20 ¶ 43. When he informed Kasbaum of his health condition, she was dismissive, stating "luckily you're not a woman going through menopause." *Id.* ¶ 42.

Eventually, Brown applied for unpaid medical leave under the FMLA. *See id.* ¶ 43. He alleges that his FMLA request was approved on April 1, 2022. *Id.* ¶ 44. After Brown's FMLA application was approved, Kasbaum attempted to require him to use up his paid time off ("PTO") before accessing his FMLA. *Id.* ¶¶ 46–48. Brown overheard Kasbaum tell Kornfiend that "I'm not letting him work from home, he has to use his PTO and when that's exhausted, I will write him up." *Id.* ¶ 26(m). In an email addressed to Kasbaum and Brown, HR indicated that Brown had to be given FMLA leave prior to leave being deducted from his PTO. *Id.* at 49–51. Despite this guidance, Brown alleges that Kasbaum nonetheless reduced his pay, continued to deny his telework request, and required him to exhaust his PTO. *Id.* ¶¶ 45–49, 53.

After Brown took FMLA leave, he alleges that Kasbaum met with Kornfiend and Henderson to devise a plan to terminate him. *Id.* ¶¶ 47, 48, 53, 56. Brown overheard Kasbaum say "I don't want him on my team" and Henderson say "[w]e have to get him out." *Id.* ¶ 50. On April 25, Kasbaum eliminated Brown's "work flex" benefit (which allowed him to work from home a limited number of days every week), and Brown was required to come into the office five days a week. *Id.* at 39. In May, Brown alleges that he attempted to apply for another "Planning" position at Ferrara. *Id.* ¶ 35. Once again, Brown alleged that Ferrara pre-selected another individual for the job and failed to hire him in retaliation for his HR complaints. *Id.* This individual's race and sexual orientation is not specified. *Id.*

On May 24, 2022, Brown filed a charge with the EEOC alleging harassment, retaliation, and discrimination on the basis of his race and sexual orientation. R. 25 at 34. On May 31, Brown was called into a meeting with HR and Kasbaum and was "written up" for poor performance. R. 20 ¶ 57–58. During this meeting, Brown alleges that Kasbaum made an inappropriate comment regarding his sexual orientation by pointing at a "Gay Pride" flag in the office, stating "oh Ken look at all the nice stuff they have for you," and laughing. *Id.* ¶ 57.

On June 1 and June 3, 2022, Brown was called into another meeting with Henderson and Kasbaum to address his performance. R. 20 at 65–66 (Exhibit K-1). At the end of the June 3 meeting, he was suspended pending investigation for insubordination. *Id.* He was terminated shortly thereafter. *See generally id.* Brown filed an amended charge with the EEOC on June 9, indicating that he had been terminated after filing his initial charge. R. 25 at 32. The EEOC sent Brown a "Notice of Right to Sue" authorizing his suit to proceed. *Id.* at 27. Brown filed the instant suit, asserting discrimination, hostile work environment, retaliation, and wrongful termination under Title VII and violations of FMLA. R. 1. He filed an amended complaint on November 21, 2022. R. 20. Ferrara now moves to dismiss. R. 22.

## LEGAL STANDARD

"To survive a motion to dismiss under Rule 12(b)(6), the complaint need contain only 'a short and plain statement of the claim showing that the pleader is entitled to relief.'" *Huri v. Off. of the Chief Judge of the Cir. Ct. of Cook Cnty.*, 804 F.3d 826, 832 (7th Cir. 2015) (quoting Fed. R. Civ. P. 8(a)(2)). At the pleading stage, "[s]pecific facts are unnecessary." *Id.* Rather, the complaint must give the defendant

fair notice of what the claim is and the grounds upon which it rests. *Olson v. Champaign Cnty.*, 784 F.3d 1093, 1098 (7th Cir. 2015) (citing *Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (per curiam), and *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). Although a claim must be "plausible" to pass muster, *Twombly* 550 U.S. at 570; *Iqbal*, 556 U.S. at 678, "[p]lausibility does not mean probability: a court reviewing a 12(b)(6) motion must ask itself *could* these things have happened, not *did* they happen." *Huri*, 804 F.3d at 833 (citation omitted) (emphasis in original).

In Title VII cases such as this one, a complaint need only identify "the type of discrimination the plaintiff thought occurred," "by whom," and "when" in order to sufficiently state a claim. *Id.* (citing *Swanson v. Citibank, N.A.*, 614 F.3d 400, 405 (7th Cir. 2010)) (cleaned up). Moreover, where the defendant is proceeding *pro se*, the complaint is "to be liberally construed." *Erickson*, 551 U.S. at 94. "[A] pro se complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Id.*

## ANALYSIS

Ferrara's motion to dismiss pertains solely to Brown's Title VII claims. Title VII forbids an employer "to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race . . . [or] sex . . ." 42 U.S.C. § 2000e-2(a)(1).

Brown alleges several counts under Title VII: workplace harassment due to a hostile work environment, retaliation, and wrongful termination.[2] *See generally* R. 20. Ferrara does not dispute that Brown exhausted his administrative remedies by timely filing an EEOC charge. *See generally* 42 U.S.C.A. § 2000e-5 *et seq.*; *see also Gibson v. West*, 201 F.3d 990, 993 (7th Cir. 2000) (holding that "a failure to exhaust administrative remedies" by filing an EEOC charge "is not a jurisdictional flaw" and is therefore subject to waiver or estoppel).

Instead, Ferrara argues that Brown has failed to state a claim for hostile workplace environment under Title VII, and that, to the extent that Brown's discrimination and retaliation claims are based on failure to hire, they must be dismissed as improperly pleaded or outside the scope of his amended EEOC charge. We consider each of these arguments.

## I.    PLAINTIFF'S HOSTILE WORK ENVIRONMENT CLAIM

Harassment that is "sufficiently severe or pervasive to alter the terms and conditions of employment" is actionable under Title VII as a claim of hostile work environment. *Cole v. Bd. of Tr. of N. Ill. Univ.*, 838 F.3d 888, 895–96 (7th Cir. 2016) (citations omitted). To state a claim for hostile work environment based on race or sex, Brown must plausibly allege that: (1) he was subject to unwelcome harassment; (2) the harassment was based on his race or sex; (3) the harassment was severe or

---

[2] Count IV of the amended complaint is styled as "Wrongful Termination and Hostile Work Environment." We construe this count as asserting two distinct claims: one for wrongful termination and one for hostile work environment. *See Kakkanathu v. Rohn Indus., Inc.*, No. 05-1337, 2009 WL 322236, at *3 (C.D. Ill. Feb. 9, 2009) (wrongful termination is "an entirely different claim" than hostile work environment).

pervasive so as to alter the conditions of his work environment by creating a hostile or abusive situation; and (4) there is a basis for employer liability. *Cooper-Schut v. Visteon Auto. Sys.*, 361 F.3d 421, 426 (7th Cir. 2004).

Discrimination on the basis of sexual orientation is a form of sex discrimination under Title VII. *Bostock v. Clayton Cnty.*, 140 S. Ct. 1731, 1746–47 (2020). In considering allegations of Title VII discrimination that are based on multiple protected classes—like the race-based and sexual orientation-based discrimination alleged here—we do not consider the protected classes separately but rather address the cumulative effect of the claimed discrimination. *See White v. Fid. Brokerage Servs.*, LLC, No. 19-CV-00582, 2019 WL 6052398, at *4 (N.D. Ill. Nov. 15, 2019) (citing *Masud v. Rohr-Grove Motors, Inc.*, No. 13 C 6419, 2015 WL 5950712, at *4 (N.D. Ill. Oct. 13, 2015)); *accord Shazor v. Prof'l Transit Mgmt.*, 744 F.3d 948, 958 (6th Cir. 2014) (rejecting separation of hostile work environment by characteristic and observing "the realities of the workplace, let alone the purpose of Title VII, will not allow such an artificial approach"); *Lam v. Univ. of Haw.*, 40 F.3d 1551, 1562 (9th Cir. 1994) ("[W]here two bases for discrimination exist, they cannot be neatly reduced to distinct components").

In determining whether a workplace is objectively hostile for the purposes of Title VII, we must consider "the totality of the circumstances." *Alamo v. Bliss*, 864 F.3d 541, 549 (7th Cir. 2017). These include "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work

performance." *Harris v. Forklift Sys. Inc.*, 510 U.S. 17, 23 (1993). The Seventh Circuit has indicated that there is no "magic number" of instances required to demonstrate a hostile work environment. *Bliss*, 864 F.3d at 550 (citation omitted). Both "[a] severe episode that occurs as rarely as once and a relentless pattern of less harassment both may violate Title VII." *Id.* (quotation marks omitted).

Two Seventh Circuit cases, *Huri v. the Office of the Chief Judge of the Circuit Court of Cook County*, and *Alamo v. Bliss*, illustrate how allegations of hostile work environment should be addressed at the motion to dismiss stage.

In *Huri*, a Saudi Arabian Muslim woman alleged that she was subjected to a hostile work environment based on her nationality and religion. 804 F.3d at 829. Reversing the district court's dismissal, the Seventh Circuit emphasized that the pleading burden in Title VII hostile work environment cases is low—a complaint need only identify "'the type of discrimination' that the plaintiff thought occurred, 'by whom, . . . and when.'" *Id.* at 833 (quoting *Swanson*, 614 F.3d at 405). The plaintiff was only required to "describe events that *could* have happened and which discovery [could] reasonably [be] expected to reveal" in order to plead her case. *Id.* at 834 (emphasis in original). Allegations that the plaintiff was subjected to "false allegations, different rules, and greater scrutiny" on account of her religion and nationality were therefore sufficient. *Id.* at 830, 834.

In *Bliss*, a Puerto Rican employee of the Chicago Fire Department alleged that he was subjected to a hostile work environment based on his race and nationality. 864 F.3d at 545–46. Again reversing the district court's dismissal, the Seventh Circuit

stressed the need to consider the totality of the circumstances in determining whether the plaintiff had alleged a hostile work environment. The Seventh Circuit rejected the argument that so-called "trivial incidents"—like the plaintiff's food being thrown out of the fridge or being stolen by co-workers—could not support a hostile work environment claim because, taken in connection with incidents of more severe harassment like racial slurs, they were plausibly part of a "multifaceted effort" to harass the plaintiff. *Id.* at 550–51.

*Bliss* and *Huri* indicate that Brown's burden at the pleading stage is light. Brown need only describe the "who," "what," and "where" of the harassment he suffered to prevent dismissal—exhaustive detail is not required. *Huri*, 804 F.3d at 833. Moreover, if Brown can allege at least one incident of sufficiently severe sex or race-based harassment, this may be sufficient to support a hostile environment claim or render other "trivial incidents" actionable under the totality of the circumstances analysis. *Bliss*, 864 F.3d at 550–51.

With these principles in mind, we turn now to Brown's allegations. The amended complaint alleges that Brown was denied benefits that were provided to non-African American employees (like phone reimbursement and working from home) and was assigned tasks outside of his job description. When Brown complained to HR that this disparate treatment was discriminatory, he was yelled at by his supervisors, micromanaged, and subjected to increased scrutiny. The amended complaint details at least four instances of coworkers and supervisors making comments directed at Brown's race or his sexual orientation. Brown further alleges

11

that a fellow employee, John Kornfiend, made unspecified comments toward him reflecting racial animus, said that he did not like black and gay people, and harassed him with a gun and knife. When Brown notified his supervisors about this harassment, they did not address his concerns, made inappropriate comments about Brown's sexual orientation, and conspired to terminate him.

Viewing these allegations in the light most favorable to Brown and considering the liberal construction that we must give his pleadings, we find that they are sufficient to state a claim for hostile work environment under Title VII.

The key allegation supporting this conclusion is that Kornfiend made threatening or racially hostile remarks to Brown while carrying a gun and a knife, and that Ferrara failed to respond. While "[o]ffhand comments, isolated incidents, and simple teasing do not rise to the level of conduct that 'alters the terms and conditions of employment,' for a hostile work environment claim," *Scruggs v. Garst Seed Co.*, 587 F.3d 832, 840-41 (7th Cir. 2009), the fact that Kornfiend made harassing remarks to Brown while armed with a gun and knife changes the calculus. Harassing comments made while carrying a weapon in close physical proximity (an 8x8 foot workspace) to the plaintiff are plausibly both "severe" and "physically threatening." *See Harris*, 510 U.S. at 23; *see also Gomez v. City of Chi.*, No. 16 C 7743, 2017 WL 131565, at *4 (N.D. Ill. Jan. 13, 2017) (allegations that coworker acted in a threatening manner with a knife supported plaintiff's hostile work environment claim); *Tolbert v. Dave Miller Olds, Inc.*, No. 98 C 5312, 2000 WL 655958, at *4 (N.D. Ill. May 19, 2000) (allegations that plaintiff felt threatened by coworker because "he

bragged about carrying a gun and having a license to kill" and because "he had in fact shown her the gun on one occasion" supported hostile work environment claim). Moreover, this was not a one-time occurrence—Brown alleges that he was harassed "daily, in person and online," and "whenever" Kornfiend came to the office. R. 20 ¶¶ 36–37. Brown also asserts that Kornfiend's actions negatively impacted his work by creating a "highly stress[ful], scary environment." R. 25 at 5. Based on these assertions, Brown has plausibly alleged severe race or sex-based harassment. *See Harris*, 510 U.S. at 23

Ferrara raises several arguments in response. First, it argues that Brown's allegations regarding Kornfiend's harassment are conclusory and insufficiently specific. R. 22 at 4–7. This argument is unpersuasive. Ferrara cites no case law for the proposition that a plaintiff must specifically allege exactly what was said to him at the pleading stage. *See id.* Rather, *Huri* indicates that alleging "the type of discrimination the plaintiff thought occurred," "by whom," and "when" is sufficient. 804 F.3d at 833; *see also Curde v. Xytel Corp.*, 912 F. Supp. 335, 341 (N.D. Ill. 1995) ("[T]he fact that [the plaintiff] cannot remember [the defendant's] exact words or the timing of several of the alleged incidents is not fatal to her claim."). Brown has satisfied this modest burden.

Ferrara also argues that "a reasonable fact finder" would not deem Brown's work environment hostile. R. 22 at 5. Perhaps. But "it is premature at the pleadings stage to conclude just how abusive [a] work environment was." *Huri*, 804 F.3d at 834. The court's role at this stage is not to speculate as to what a "reasonable fact finder"

would determine, but rather to determine whether the amended complaint has plausibly stated a claim on which relief may be granted. *See id.* at 833 ("Plausibility does not mean probability."). Here, Brown's claims of harassment are plausible.

Ferrara cites several cases dismissing hostile work environment claims where the alleged harassment was insufficiently severe as a matter of law. *See* R. 22 at 6. But none of these cases involve allegations of racist or anti-gay remarks directed toward the plaintiff by an individual who was wielding a weapon. *Compare Boniface v. Westminster Place*, No. 18-CV-4596, 2019 WL 479995, at *3 (N.D. Ill. Feb. 7, 2019) (dismissing hostile environment claim where there were "no specific allegations suggesting that any conduct was physically threatening or verbally abusive or how it interfered with her work performance."); *Adam v. Obama for Am.*, 210 F. Supp. 3d 979, 991 (N.D. Ill. 2016) (dismissing hostile environment claim where plaintiff merely "alleged that her co-workers and supervisors were mean to her and humiliated her."); *Triplett v. Starbucks Coffee*, No. 10 C 5215, 2011 WL 3165576, at *5–7 (N.D. Ill. July 26, 2011) (dismissing hostile work environment based on store manager's statement that "there were not as many black people in Boston, where she was from, as there were in Chicago."). We decline to dismiss Brown's claims based on a lack of severity at this juncture.

Ferrara also attacks the nexus between the harassment and Brown's protected status, arguing that Brown fails to connect the allegation that Kornfiend carried a gun or a knife to his race or sexual orientation. *See* R. 22 at 5. To support a hostile work environment claim, however, Brown "need not show that the complained-of

conduct was explicitly racial" (or sexually discriminatory) but "must show" that the conduct "had a racial character or purpose" (or sexist character or purpose). *Yancick v. Hanna Steel Corp.*, 653 F.3d 532, 544 (7th Cir. 2011). Ferrara argues that fact that Kornfiend carried a gun and knife at work cannot constitute harassment of Brown because Kornfiend would have carried those items around other employees as well. R. 22 at 5. This is not a fair reading of the allegations in the amended complaint, however. The amended complaint does not allege that Kornfiend merely *carried* a gun and knife in Brown's presence, it alleges that Brown "*was harassed* by [] Kornfiend with a gun and knife," that Kornfiend made "racial, political, and radical comments" to Brown, and that Kornfiend stated "that he disliked gays[] and blacks." R. 20 ¶¶ 36–37 (emphasis added); R. 25 at 4. Interpreting these allegations in the light most favorable to Brown indicates that the alleged harassment plausibly had "a racial character or purpose." *Yancick*, 653 F.3d at 544.

Finally, in its reply brief, Ferrara argues that Brown waived arguments concerning severity and nexus by failing to adequately address them in his response. R. 30 at 3 (citing *Lee v. Ne. Ill. Reg'l Commuter R.R. Corp.*, 912 F.3d 1049, 1054 (7th Cir. 2019). But Ferrara expects too much of a *pro se* litigant. "A *pro se* plaintiff may 'simply rest on the assumed truthfulness and liberal construction afforded his complaint' and 'the nonmovant's lack of response to a motion to dismiss constitutes no admission of the proponent's factual assertions.'" *Johnson v. Bucky's Express*, No. 19 C 420, 2021 WL 5833976, at *1 (N.D. Ill. Dec. 9, 2021) (quoting *Curtis v. Bembenek*,

48 F.3d 281, 287 (7th Cir. 1995)). *Lee* does not help Ferrara because it involved litigants who, unlike Brown, had retained counsel. *See generally* 912 F.3d 1049.

Having concluded that Brown has plausibly alleged severe harassment based on his protected status, Ferrara's failure to take "prompt and appropriate corrective action" establishes a basis for employer liability. *Cerros v. Steel Techs., Inc.*, 398 F.3d 944, 954 (7th Cir. 2005) (collecting cases). Brown alleges that his supervisors, as well as Ferrara's HR team and safety managers, were notified of Brown's concerns, but denied his request to move to a separate workspace and otherwise took no remedial action. R. 20 ¶ 38. Indeed, Brown alleges that Ferrara actively encouraged the harassment. *Id.* ¶ 64. This is a basis for liability under Title VII. *See Bliss*, 864 F.3d at 550 (considering allegations that the plaintiff's supervisor was informed of the allegations but "did not ameliorate the conditions of [the plaintiff's workplace"); *Huri*, 804 F.3d at 830 (alleging that supervisor responded to internal complaints with further harassment).

Not only does Brown allege that his supervisors failed to act in response to his complaints of harassment—he alleges that they engaged in harassment of their own by subjecting Brown to greater scrutiny, micromanaging him, and making inappropriate comments about his sexual orientation. *See Huri*, 804 F.3d at 830, 834 (allegations that supervisors implicitly criticized the plaintiff, "subjected her to greater scrutiny than her coworkers," and made her suffer "uniquely bad treatment" were sufficient to state a claim for hostile work environment).

Specifically, Brown alleges that Henderson and Kusbaum told him he should "act like a man" in response to allegations of discrimination, made jokes about a Gay Pride flag at his expense, and negatively compared his health issues to a woman going through menopause. R. 20 ¶¶ 18, 42, 57. On their own, none of these comments would necessarily be actionable—Title VII does not impose a "general civility code." *Faragher*, 524 U.S. at 788. But, like the "trivial incidents" at issue in *Bliss*, they must be considered as part of the greater context of harassment and disparate treatment that Brown alleges he suffered. *See Bliss*, 864 F.3d at 550 (quoting *Robinson v. Sappington*, 351 F.3d 317, 330 (7th Cir. 2003)) ("[T]he specific circumstances of the working environment and the relationship between the harassing party and the harassed . . . bear on whether [the] line is crossed.").

Ferrara implies that we must consider Brown's allegations of sex orientation-based discrimination separately from his allegations of race-based discrimination. R. 22 at 4–7. But a plaintiff is not required to state separate hostile work environment claims for each protected characteristic where the alleged harassment targets multiple characteristics. *See White LLC*, 2019 WL 6052398, at *4. In *Shazor*, the Sixth Circuit recognized that "African American women are subjected to unique stereotypes that neither African American men nor white women must endure." 744 F.3d at 958. Similarly, gay African American men conceivably face prejudices that neither white men nor heterosexual men face.

Ferrara also points to the fact that Henderson was Black to suggest he did not discriminate against Brown because of his race. R. 22 at 3. But "it would be unwise

17

to presume as a matter of law that human beings of one definable group will not discriminate against other members of their group." *Castaneda v. Partida*, 430 U.S. 482, 499 (1977). Moreover, Brown has plausibly alleged that Henderson made disparaging comments about Brown's sexual orientation, telling him to "act like a man." R. 1 ¶ 18.

In sum, we find that Brown's allegations are sufficient, when considered under the totality of the circumstances, to plausibly allege that he was subjected to a hostile work environment on account of his race or sexual orientation, especially considering Brown's *pro se* status and the liberal construction we are obligated to give the pleadings. *Erickson*, 551 U.S. at 94. Brown must provide evidence of these allegations to prevail at summary judgment. "But that question can safely be postponed until another day." *Huri*, 804 F. 3d at 834. We therefore deny Ferrara's motion to dismiss with respect to Brown's hostile work environment claim.

## II. PLAINTIFF'S FAILURE-TO-HIRE CLAIM

Next, Ferrara moves to dismiss Counts I and II of the complaint in part to the extent that they assert a failure-to-hire theory. To state a Title VII claim based on a failure to hire, a plaintiff must plausibly allege that (1) he is a member of a protected class, (2) he applied for and was qualified for an open position, (3) despite his qualifications, he was rejected for the position, and (4) a similarly situated person outside of his protected class was hired for the position instead, or the position remained open. *Sweatt v. Union Pac. R. Co.*, 796 F.3d 701, 709 (7th Cir. 2015). In addition, to establish retaliation, a plaintiff must also allege that the failure to hire

was done in response to the plaintiff engaging in a "protected activity." *See Cichon v. Exelon Generation Co.*, 401 F.3d 803, 812 (7th Cir. 2005).

Ferrara raises two arguments in support of partial dismissal. First, Ferrara argues that Brown fails to state a claim based on failure to hire since there are no allegations that Brown applied or asked to be hired for the position, or that Ferrara hired an individual outside of his protected class. R. 22 at 8–10. Second, Ferrara argues that Brown's failure to hire theory is outside of the scope of his EEOC charge and should be dismissed on that basis. *Id.* at 7–8.

We agree with Ferrara. First, Brown has failed to adequately plead a claim for failure to hire in the amended complaint. The amended complaint contains just two potentially relevant allegations concerning failure to hire: (1) that another individual was preselected for a VMS Distribution Analyst position and Brown was told not to apply, R. 1 ¶ 26(b); and (2) Brown applied for a "Planning" position and that another individual was informed she had the job and that her offer would be submitted after Brown completed his interview. *Id.* ¶ 35.

With respect to the first incident, Brown does not even allege that he applied for the VMS Distribution Analyst position, much less that the individual who Ferrara hired was outside of his protected class. Thus, his allegations are facially insufficient. With respect to the second incident, while Brown does allege that he applied for the Planning position, he does not elaborate on his qualifications for the job or allege that the individual who was ultimately selected for the position was outside of his

protected class. Even viewing these allegations liberally, they are insufficient to state a *prima facie* claim based on failure to hire.

Better pleading would not have helped, however. Brown's failure to hire claims suffer from an even more fundamental defect: they were not included in his amended EEOC charge. "Generally a plaintiff may not bring claims under Title VII that were not originally brought among the charges to the EEOC." *Douglas v. Alfasigma USA, Inc.*, No. 19-CV-2272, 2021 WL 2473790, at *16 (N.D. Ill. June 17, 2021) (quoting *Harper v. Godfrey Co.*, 45 F.3d 143, 147–48 (7th Cir. 1995)). The purpose of this rule is to "afford an opportunity for the EEOC to settle the dispute between the employee and employer and put the employer on notice of the charge against it." *Harper*, 35 F.3d at 148.

There is a limited exception to this rule; a plaintiff may assert a claim that was not included in his EEOC charge where the new claim is "like or reasonably related to the allegations of the charge and growing out of such allegations." *Chaidez v. Ford Motor Co.*, 937 F.3d 998, 1004 (7th Cir. 2019) (citation omitted). This standard is only satisfied if (1) "there is a reasonable relationship between the allegations in the charge and the claims in the complaint" and (2) "the claim in the complaint can reasonably be expected to grow out of an EEOC investigation of the allegations in the charge." *Cheek v. W. & S. Life Ins. Co.*, 31 F.3d 497, 500 (7th Cir. 1994). The charge and complaint "must, at minimum, describe the *same conduct* and implicate *the same individuals*." *Id.* at 501 (emphasis in original).

20

Here, neither the general rule nor the exception brings Brown's failure to hire claims within the scope of his amended EEOC charge. First, Brown's amended EEOC charge does not mention that he applied for or wanted to apply for any other positions at Ferrara and was denied. The charge refers to allegations of harassment, intimidation, and discrimination, as well as Ferrara's failure to provide an accommodation for Brown's health issues—it does not mention failure to hire. R. 25 at 32.

Nor is Brown's failure to hire theory reasonably related to the claims set forth in his amended EEOC charge. Courts in this District have held that "an administrative charge alleging discriminatory discharge does not imply that discriminatory failure to promote occurred." *Sutton v. Apple Inc.*, No. 10-CV-08176, 2011 WL 2550500, at *2 (N.D. Ill. June 23, 2011) (allegations in EEOC charge that plaintiff had been terminated due to mental disability were not reasonably related to allegations of failure to promote and failure to hire); *Borromeo v. City of Chi.*, No. 04 C 4078, 2004 WL 2966925, at *3 (N.D. Ill. Nov. 16, 2004) (striking failure to hire claims not included in EEOC charge). Even construing the charge liberally, we cannot conclude that it is sufficient to put Ferrara on notice of Brown's failure to hire claim.

In sum, Brown's failure to hire claims are clearly outside of the scope of his EEOC charge and therefore must be dismissed. We therefore dismiss Brown's failure to hire claims. Dismissal due to failure to exhaust administrative remedies is typically without prejudice. *See Teal v. Potter*, 559 F.3d 687, 693 (7th Cir. 2009). In this case, however, Brown would have needed to file a charge within three hundred

days after the failure to hire occurred—a time period that has already expired. *See* 2 USCA § 2000e-5(e)(1). Because more than three hundred days have passed since the alleged failure to hire, "there is no practical distinction between a dismissal without prejudice and a dismissal with prejudice." *Brown v. United Airlines, Inc.*, No. 15 C 2751, 2015 WL 5173646, at *4 (N.D. Ill. Sept. 2, 2015).

## CONCLUSION

Defendant Ferrara Candy Company's motion to dismiss, R. 22, is granted in part and denied in part. The plaintiff's "failure to hire" claims are dismissed with prejudice. Ferrara will have 14 days to answer the amended complaint. It is so ordered. Status hearing set for October 25, 2023, at 9:30 a.m.

Date: <u>10/5/2023</u>

_____
JEREMY C. DANIEL
United States District Judge